IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

WADE FREEMAN,                                )
                                             )
        Plaintiff,                           )
                                             )
v.                                           )     Case No. 1:23-cv-305-SMD
                                             )
MARTIN J. O'MALLEY,[1]                       )
*Commissioner of Social Security*,           )
                                             )
        Defendant.                           )

## **OPINION & ORDER**

Plaintiff Wade Freeman ("Freeman") applied for Supplemental Security Income

("SSI") on October 23, 2020, alleging he became disabled on December 5, 2018.  Tr. 11,

167-72. When Freeman's application was denied at the initial administrative level, he

requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 7-20, 50-69, 70-78,

79-87, 110-13. After that hearing, the ALJ found on November 14, 2022, that Freeman was

not disabled. Tr. 96-122, 172-86. Freeman appealed the ALJ's decision to the Social

Security Appeals Council (the "Appeals Council"), which denied review. Tr. 1-6.

Therefore, the ALJ's decision became the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131

(11th Cir. 1986). Freeman now appeals that decision under 42 U.S.C. § 405(g). For the

---

[1] On December 18, 2023, the United States Senate confirmed Martin O'Malley as Commissioner of the Social Security Administration. Thus, the Court substitutes O'Malley for his predecessor, Kilolo Kijakazi. *See* FED. R. CIV. P. 25(d)(1).

reasons that follow, the Court AFFIRMS the Commissioner's decision.[2]

## I.    STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th

---

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 15); Def.'s Consent (Doc. 16).

[3] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine wshether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[4] or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial

---

[4] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or sher capacity and impairments." *Phillips*, 357 F.3d at 1240.

evidence, or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

## III.   ADMINISTRATIVE PROCEEDINGS

Freeman was 55 years old when he applied for benefits and 57 years old on the date of the ALJ's decision. Tr. 19-20. He has a limited education and past relevant work experience as a brick mason and construction worker. Tr. 19-20, 66, 192. Freeman alleged disability due to back pain, sciatica, fibromyalgia, and a limited education. Tr. 191.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Freeman's disability determination. At step one, the ALJ found that Freeman has not engaged in substantial gainful activity since his application date. Tr. 12. At step two, the ALJ found that Freeman has the severe impairments of lower

back disorder and shoulder disorder. Tr. 12-14. At step three, the ALJ found that Freeman does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 14-15. The ALJ proceeded to determine Freeman's RFC, finding that Freeman could perform the full range of medium work. Tr. 15-19. At step four, the ALJ found that Freeman is unable to perform any past relevant work. Tr. 19. At step five, the ALJ relied on the testimony of a VE and determined that considering Freeman's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Freeman can perform. Tr. 19-20. Accordingly, the ALJ found that Freeman has not been under a disability since the date of his application. Tr. 20.

## IV.  FREEMAN'S ARGUMENTS

Freeman argues that the ALJ erred by failing to base the RFC on medical opinion evidence. Pl.'s Br. (Doc. 12) p. 7.

## V.  MEDICAL OPINIONS & EVIDENCE

The medical evidence in this case is sparse. The record before the ALJ contained three state agency medical opinions, two consultative examinations, and hospital records that were outside of the relevant period. Tr. 272-327. The Court discusses each category of evidence and the ALJ's consideration of that evidence below.

### A.  State Agency Medical Opinions

In June 2021, Dr. E. Russell provided a state agency medical assessment wherein he opined that Freeman should be limited to light work. Tr. 73. Dr. Russell concluded that

Freeman could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Tr. 73. Similarly, in April 2022, Dr. Gregory Parker provided a state agency medical assessment wherein he opined that Freeman should be limited to light work with the same lift and carry restrictions imposed by Dr. Russell. Tr. 82.

In May 2022, Dr. Murarui Bijpuria reviewed the state agency medical consultants' opinions and concluded that those assessments were persuasive. Tr. 18; 291-93. The ALJ found Dr. Bijpuria's opinion not persuasive because he determined that the lifting restrictions—i.e., that Freeman should be limited to lifting no more than 20 pounds occasionally and 10 pounds frequently—were inconsistent with the records reviewed by Dr. Bijpuria. Tr. 18. Specifically, the ALJ noted that Freeman "routinely had a normal gait, was able to get on and off the examination table without issue, and had a negative straight leg raise." Tr. 18. Further, the ALJ noted that Freeman had "minimal" limitations in his strength in 2020 and 5/5 strength in all areas during his evaluation in 2022. Tr. 18. Based on this evidence, the ALJ concluded that Freeman "would be capable of lifting 50 pounds occasionally and 25 pounds frequently[.]"[6] Tr. 18.

## B. Consultative Examinations

The first consultative examination, performed by Dr. Sam Banner in December 2020, states that Freeman "needs lifelong medical and orthopedic care to include pain

---

[6] Freeman does not argue that the ALJ erred in finding Dr. Bijpuria's opinion not persuasive. *See* Pl.'s Br. (Doc. 12); Pl.'s Reply (Doc. 14). Thus, he has abandoned that issue on appeal, *United States v. Valladares*, 544 F.3d 1257, 1267 (11th Cir. 2008) (issues not challenged on appeal are deemed abandoned), and the Court assumes that substantial evidence supports the ALJ's determination that the opinion is not persuasive.

management." Tr. 277. The ALJ found that this statement did not provide an assessment of Freeman's functional abilities and was therefore not a persuasive medical opinion.[7] Tr. 18.

The second consultative examination, performed by Imani Goodwin, CRNP, in April 2022, states that Freeman can only lift "10 pounds occasionally on both sides and carry short distances." Tr. 287. The ALJ found that this opinion was not persuasive because "[t]he extreme limitations . . . are unsupported by the objective examination performed at the time the opinion was rendered, which noted full strength in all areas, a negative straight leg raise, the ability to get on and off the examination table and ambulate normally without an assistive device." Tr. 18. Further, the ALJ found that the opinion was inconsistent "with the many normal findings on the previous examination, including minimal limitations in strength, a normal gait, and normal sensation[ ], and the claimant's lack of treatment throughout the relevant period."[8] Tr. 18.

---

[7] Freeman does not argue that the ALJ erred in finding that Dr. Banner's opinion was not a persuasive medical opinion. *See* Pl.'s Br. (Doc. 12); Pl.'s Reply (Doc. 14). Thus, he has abandoned that issue on appeal, *Valladares*, 544 F.3d at 1267, and the Court assumes that substantial evidence supports the ALJ's determination that Dr. Banner's statement was not persuasive.

[8] Freeman does not argue that the ALJ erred in finding CRNP Goodwin's opinion not persuasive. *See* Pl.'s Br. (Doc. 12); Pl.'s Reply (Doc. 14). Thus, he has abandoned that issue on appeal, *Valladares*, 544 F.3d at 1267, and the Court assumes that substantial evidence supports the ALJ's determination that the opinion was not persuasive.

### C. Hospital Records[9]

On March 24, 2006, Freeman reported to the Emergency Room ("ER") with constant, moderate lower back pain that he claimed was exacerbated by sitting and relieved by walking. Tr. 301. He was diagnosed with lumbar radiculopathy and sent home. Tr. 302. One month later, Freeman returned to the ER with back pain. Tr. 304. At that time, Freeman described his pain as sharp and severe and claimed that it could not be relieved. Tr. 304. He was diagnosed with acute sciatica and referred to Southern Bone and Joint. Tr. 305. In May 2016, Freeman reported to the ER complaining of pain all over and was diagnosed with sciatica. Tr. 321. On August 23, 2010, December 24, 2013, and December 25, 2013, Freeman went to the ER for conditions unrelated to his back pain. Tr. 307, 310, 315.

## VI.   FREEMAN'S TESTIMONY

Freeman testified that he takes over-the-counter medication for his back pain. Tr. 56. He stated that he could not recall the last time he went to the doctor for his back and that his lack of treatment was due to his inability to afford insurance. Tr. 56-57. Freeman indicated that, at some point, Southern Bone and Joint gave him epidurals, which made his back "fine for years" until he experienced a flare-up prior to the COVID pandemic. Tr. 56. Once or twice per week, when he experiences a flare-up, Freeman uses an icepack and curls up in the fetal position to relieve the pain. Tr. 63-64.

---

[9] The hospital records contained in this section are prior to Freeman's alleged onset date of December 5, 2018. There are no medical treatment records from the onset date through the date of the ALJ's decision.

Freeman testified that it hurts to drive because he can hardly sit still. Tr. 58. However, he admitted that he drives back and forth to the grocery store and to Walmart. Tr. 58. Freeman stated that, when he is not in pain, he helps out and cleans up around the house. Tr. 60, 61. He indicated that he can sometimes lift 20 or 30 pounds without pain to his waist and carry it for a little while, and that he can stand approximately four hours out of an eight-hour day, and two or three hours at a time. Tr. 62-63.

Freeman has looked into obtaining low-cost medical care, including Medicare, Medicaid, and Obamacare. Tr. 59. However, he testified that he does not have a sufficient source of income to receive medical care assistance. Tr. 59. Instead, he earns money by selling his plasma and he receives assistance from his family and fiancé. Tr. 55, 59.

## VII.   ANALYSIS

Freeman argues that the ALJ erred "as a matter of law by failing to base the RFC on medical opinion evidence." Pl.'s Br. (Doc. 12) p. 9. While Freeman presents several subparts to this argument, its crux appears to rest on the ALJ's finding that all of the medical opinions in the record were not persuasive, thereby leaving the ALJ without a medical opinion on which to support the RFC determination. *Id*. at 10. And because there was no medical opinion supporting the RFC, Freeman argues that the ALJ improperly substituted his own judgment for that of the physicians and arrived at an RFC that lacked evidentiary support. *Id*. at 11-12.

To begin, the ALJ did not err as a matter of law by failing to base the RFC on medical opinion evidence. Because the RFC is solely within the ALJ's purview, the

regulations do not require the ALJ to secure a medical source opinion for his RFC determination. *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011); 20 C.F.R. § 404.1546(c). Rather, as long as the ALJ's RFC determination is based on substantial evidence, the absence of a medical opinion will not render the RFC determination invalid. *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 924 (11th Cir. 2007). Thus, the Court finds that the ALJ did not commit legal error simply because he did not base the RFC on medical opinion evidence.

But while an ALJ is not required to base an RFC on medical opinion evidence, he is not allowed to substitute his judgment for that of medical sources. *Riley v. Comm'r of Soc. Sec.*, 2023 WL 2894366, at *3 (M.D. Fla. Apr. 11, 2022) ("[A]n ALJ cannot substitute his judgment for that of the medical sources, but there is no requirement that an RFC must be based on a physician's opinion."); *see Green*, 223 F. App'x at 923 (rejecting a claimant's argument that the ALJ's RFC must be based on a physician's opinion and finding that the ALJ did not substitute his judgment for that of the physician by determining that the opinion was inconsistent with the medical evidence). Importantly, an ALJ does not impermissibly assume the role of a doctor by viewing the record evidence as a whole and making an RFC determination. *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) (holding that "the ALJ did not 'play doctor' in assessing [the claimant's] RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing [the claimant's] RFC."). Nor does an ALJ impermissibly substitute his own judgment by

finding a medical opinion not persuasive. *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 488 (11th Cir. 2012).

Here, the ALJ assessed all of the relevant medical and other evidence and found that Freeman was not disabled. In so doing, the ALJ examined the medical opinions in the record and found them not to be persuasive.[10] He also considered Freeman's testimony, the sparse medical treatment he received, and examinations showing normal strength and other normal findings to conclude that Freeman was capable of performing medium work. Tr. 15-19. By considering the record as a whole to make the RFC determination, the ALJ did not impermissibly substitute his judgment for the physicians' judgments (even though his opinion was different than the physicians' opinions). And the evidence cited by the ALJ in making his RFC determination meets the substantial evidence standard.

To be sure, Freeman argues that the ALJ improperly relied on his lack of treatment without considering his poverty to conclude that he was not disabled. Pl.'s Br. (Doc. 12) p. 12. The Eleventh Circuit has held that "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability," but "poverty excuses noncompliance." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (internal quotation marks omitted). Thus, when an ALJ relies primarily if not exclusively on evidence of noncompliance to deny disability, or where noncompliance is inextricably tied

---

[10] Again, the Court notes that Freeman did not substantively argue that the ALJ erred in evaluating the persuasiveness of the medical opinions. To the extent that Freeman's brief can be construed to include such an argument, Freeman did not adequately raise the issue and it is, therefore, deemed to be waived. *See N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

to the disability decision, the ALJ errs if he fails to consider the claimant's ability to afford the prescribed treatment or medication. *Id.*; *see also Dawkins v. Bowen*, 848 F.2d 1211, 1212, 1214 (11th Cir. 1988); *Beegle*, 482 F. App'x at 487. But if the disability determination is "not significantly based on a finding of noncompliance," then "the ALJ's failure to consider [the claimant's] ability to afford [treatment] does not constitute reversible error." *Ellison*, 355 F.3d at 1275; *see also Beegle*, 482 F. App'x at 487 ("Nonetheless, reversible error does not appear where the ALJ primarily based her decision on factors other than non-compliance, and where the claimant's non-compliance was not a significant basis for the ALJ's denial of disability benefits.").

Here, the ALJ considered Freeman's poverty when examining his lack of treatment. And while the ALJ recognized that Freeman "reports that [his lack of treatment] is due to a lack of insurance and financial difficulty," he ultimately concluded that Freeman's poverty did not explain his failure to seek medical care. Tr. 17. Specifically, the ALJ noted that Freeman had previously sought treatment in the ER when his symptoms were severe but had not sought any treatment from the ER during the relevant period. Tr. 17. Further, the ALJ stated that while Freeman "testified that he has looked into low-cost medical care . . . there is no evidence in the record that [he] actually sought any of these no-or-low-cost treatment options during the relevant period." Tr. 17. Therefore, the ALJ determined that—based on Freeman's lack of treatment that was not entirely explained by his poverty —his symptoms were not as disabling as he claimed. Tr. 17. As such, the ALJ fulfilled his

duty to consider whether Freeman could afford medical care before drawing an adverse inference about his lack of treatment.

Nonetheless, even if the ALJ improperly interpreted Freeman's lack of medical care, his reliance on Freeman's sparse treatment was not the exclusive or primary reason he found that Freeman was not disabled. In concluding that Freeman could perform medium work, the ALJ reasoned that—in addition to his lack of treatment—Freeman had "normal findings noted during the consultative examinations in 2020 and 2022[,]" including "normal gait, normal sensation, and minimal deficits in strength[.]" Tr. 19. The ALJ's thorough discussion of these examinations is substantial evidence supporting the RFC finding that Freeman could perform medium work. Therefore, the Court concludes that, even if the ALJ drew an improper inference from Freeman's lack of medical treatment, such an error was harmless, as the RFC determination remains otherwise supported by substantial evidence.

Finally, Freeman argues that there is no evidence supporting the ALJ's conclusion that he can perform the lifting requirements for medium work.[11] Pl.'s Reply (Doc. 14). Specifically, Freeman asserts that because there were five medical opinions stating that he could only perform the lifting requirements for light work and no evidence showing that Freeman could meet the lifting requirements for medium work, the ALJ failed to create a logical bridge between the evidence and the RFC determination. Reply (Doc. 14).

---

[11] Medium level work requires Freeman to lift no more than 50 pounds at a time with frequent lifting and carrying of objects weighing up to 25 pounds. *See* 20 C.F.R. § 404.1567.

Importantly, however, it is Freeman's burden to show he is disabled—not the Commissioner's burden to show he is not. *See* 20 C.F.R. § 404.1512(c) (noting that the claimant is responsible for providing medical evidence demonstrating an impairment and how severe the impairment is during the relevant time period). The medical evidence in this case is quite limited, and Freeman has failed to present evidence showing that his lifting limitations are greater than those imposed by the ALJ in his RFC. Indeed, other than the medical opinions that the ALJ found not to be persuasive, there is no evidence in the record that he cannot perform the lifting requirements for medium work.[12] Therefore, Freeman has failed to meet his burden to show he is disabled, and substantial evidence supports the ALJ's finding that he can perform medium work.

## VIII.   CONCLUSION

The Court finds that substantial evidence supports the Commissioner's decision. Accordingly, it is ORDERED that the Commissioner's decision is AFFIRMED. A separate final judgment will issue.

DONE this 26th day of February, 2024.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE

---

[12] The Court recounts Freeman's testimony, which the ALJ considered, that he could carry 20 or 30 pounds to his waist and carry it for a little while. Tr. 16 (Freeman "testified that he experiences pain in his shoulder which prevents him from lifting objects over his head."); *see* Tr. 62.